## CHARLEY DIAMOND v. STATE.

No. A-6496. Opinion Filed Nov. 28, 1928.
(271 Pac. 951.)

Roy White, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the county court of McIntosh county, on a charge of transporting intoxicating liquor from one point in the county to another point, and was sentenced to pay a fine of

$50 and be confined in the county jail of McIntosh county for a term of 30 days. Motion for new trial was filed and overruled, and defendant has appealed to this court for review of this case.

The testimony on behalf of the state tends to show that Arthur Kirkpatrick, a deputy sheriff, was out watching the movements of Siah Green and another Indian; witness stated the first thing that drew his attention was a car going through Vernon; it went from one negro house to another; "the car came north and stopped in the road and I got within 30 or 40 yards of the car, and defendant came up the road; we did not know it was him right then; we were coming kindly facing the car, and before I got to it Charley Diamond started to run, when he said, 'Start the motor'; I went on one side of the car and met Charley Diamond; he threw down a bottle of whisky and started to run; I caught him and started to hold him, and he dropped probably four or five bottles of whisky and a six-shooter; we had not got to him when he threw down the first bottle of whisky."

On cross-examination, the witness stated he saw him coming up the road, but did not know who it was; "I knew him when he started to run; he threw down a pint bottle of whisky and broke and ran; I nearly tore his shirt off; he kept backing around and threw down some more whisky, and when he dropped his gun Haley caught it before it dropped to the ground; I did not know it was whisky when he threw it down."

Charley Haley testified being at Vernon at the time Charley Diamond was arrested; that it was at night he was arrested, right east of the schoolhouse; some Indians had stopped their car near the schoolhouse; "we come out about 10 or 15 steps from the car and saw this fellow come up the road, and heard him say, 'Start the motor;'

Kirkpatrick ran around the car and headed this fellow off, and I ran up and turned the motor off, and when he grabbed him, he whirled and threw away a bottle of whisky; he threw the bottle of whisky as Kirkpatrick caught him and I turned off the motor of the car, and by that time two or three more bottles fell out, and about that time a pistol fell out, and I caught it." Witness identified the whisky he claims defendant threw away, and claims he found two more bottles on the ground over where the defendant was arrested; it was the defendant who said, "Start the motor"; at that time he was about 8 or 10 steps from the car; "I did not know he had the whisky before Mr. Kirkpatrick took hold of him and arrested him; Mr. Kirkpatrick took hold of defendant when he ran around the car and looked like he was going to pass the car; while Mr. Kirkpatrick and defendant was scuffling, the six-shooter fell out and I caught it; I went to keep the Indians from getting away; Kirkpatrick went around the car; the Indians were in the car." This is, in substance, all of the testimony.

During the introduction of this testimony, the defendant objected to its introduction on the ground that it was illegally obtained, which objection was overruled by the court, and defendant duly excepted. The state did not offer any testimony to show that the officers had a warrant for the arrest of the defendant, or the Indians who claimed to be in the car near him, nor did it show defendant was doing anything except walking along the road, and came up to the car in which the Indians were sitting at the time. The state witnesses approached the car, and the testimony of the state tends to show that the defendant was stopped and taken hold of by the state witness before he had done anything to indicate he was violating the law. So far as the record discloses, the defendant was coming along a public highway and approaching a car that was stopped by

the side of the road; about the same time the officers approached the car, defendant approached the car from a different direction, and, when they met, the officers took hold of the defendant, and, in the struggle, or when he was taken hold of, a bottle of whisky was dropped, and defendant was taken into custody; in the scuffle other bottles of whisky were dropped or thrown out by the defendant.

The defendant urges that all the testimony in this case was procured illegally, for the reason that he was peacefully going along the road and approached a car where the Indians were, and the officers immediately surrounded the car and illegally caught hold of the defendant and secured the testimony taken in this case against him without having any warrant for the defendant, or without seeing him commit a crime in their presence, and urges that the officers took hold of him without authority of law.

This court in the case of Keith v. State, 30 Okla. Cr. 168, 235 P. 631, in a well-considered opinion, says:

"1. No search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws in having intoxicating liquor in his possession; or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest, or shall be lawfully arrested without a warrant as authorized by law. * * *

"2. In a prosecution for unlawfully transporting intoxicating liquor defendant can not be convicted upon evidence obtained by an unlawful search of his person, without a warrant for his arrest, and neither the liquor so seized, or the evidence of the possession thereof so acquired, is admissible against him."

See Williams v. State, 34 Okla. Cr. 359, 246 P. 895.

We hold that the evidence objected to by the de-

fendant and admitted by the court over the defendant's objection was taken by the officers by an unlawful search and seizure, and was improperly received in evidence against the defendant. The objection of the defendant was well taken.

The defendant's conviction having no sufficient foundation to support it, without the use of the evidence unlawfully obtained, must be reversed.

The judgment is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.